Thank you. Good morning. My name is David Porter. I'm an assistant federal defender in Sacramento, and I represent the appellant Peter Vongxay. The issue in this case is does the federal firearm statute prohibiting ex-felons from possessing firearms violate the Second Amendment as applied to Mr. Vongxay, who has no record of violence? I urge this Court not to make the mistake of almost every other federal lower court has made. In the words of Professor Winkler, rather than seriously grapple with these Second Amendment challenges, lower courts have simply referenced Heller's admonition that the right to keep and bear arms is not unlimited and recited the exceptions recognized by the opinion. So you would like us to dig into Heller and restrictions on felons owning weapons? Peter Vongxay I believe you are required to under Heller, and there are four reasons why. Kennedy Before you get to that, can I just ask this? Peter Vongxay Yes. Kennedy Are you giving up on the Fifth Amendment equal protection claim? Are we going to focus exclusively on the Second Amendment claim? Peter Vongxay Well, I think we'll focus largely on the Second Amendment, but I'm not giving up on the Fifth Amendment. Kennedy Okay. All right. Peter Vongxay Heller does not put an end to the question, as the government claims. First of all, look at the language. The language of Heller is that these exceptions are presumptively lawful regulatory measures, presumptively is an antonym for, not a synonym of, conclusively. This does not end the measure. Kennedy Heller is the case where the originalist on the Supreme Court ignored the introductory sentence? Peter Vongxay I would disagree that they ignored the prefatory. In fact, there are about 13 pages of the opinion that are devoted to that clause. Kennedy To justifying ignoring it. Peter Vongxay To justifying placing lesser emphasis. Kennedy Go ahead with your argument. Peter Vongxay It's not merely dictum. It's obiter dictum. The facts of Heller did not present anything about the felon in possession. Kennedy From your perspective, does obiter dictum refer to looking from a high spot on something that's irrelevant? Peter Vongxay It's considering what the scope of the argument is, and obiter refers to the vast reaches beyond the scope. Kennedy Sounds medieval. Peter Vongxay It does. And so there's not a single citation of authority. Nay, there is not even reasoning or explanation for this. Kennedy Maybe we can do it the other way. I applaud the issue, the brief. You did a great job on that. It's a fascinating issue. Do you have any case, any case, that has found that 922G1 is unconstitutional because of the Second Amendment, post Heller? Peter Vongxay No. Kennedy Okay. So you want us to be the people that step out there and open the door to every felon in possession in the United States, and we'll quote you. I urge the Court to be brave and to look at the specific facts of this case where Mr. Vongxay's prior convictions do not, are not crimes of violence and he has no record of violence. Kennedy Will you review the, what were those past convictions, just briefly? Peter Vongxay Sure. It was a 1994 possession of amphetamine. One, and the other two were 2003 and 2005 second degree vehicle burglaries. None of them had, they broke into a car and stole some stereos. Kennedy Well. Both were felonies? Peter Vongxay Both were felonies under California law, which makes felonies of petty theft with a prior, which is theft of something of value under $400 if the person has a prior theft offense. Kennedy Mr. Porter, let's assume, just for discussion's sake, that we bought your argument. Since Heller clearly indicates that this, at least in some setting, is a fundamental right, at least in a home setting. We don't know whether it applies to the States or any of those other numbers, numbers of things. But arguendo, let's say it did. What, what is the standard of review that one would apply in this setting? Surely not strict scrutiny. Peter Vongxay Surely it is strict scrutiny, Your Honor. As the vast majority of cases where the court describes a right, an enumerated rights as a fundamental right, the court does apply strict scrutiny. And footnote 27 of the Heller case lists many of the specific enumerated rights, such as freedom of speech, the guarantee against double jeopardy, the right to counsel, and puts in with those rights, in the very same sentence, the right to keep and bear arms, subject to strict scrutiny. So, so from your perspective, the so-called reasonable basis that has been applied in many other settings does not really apply here. We're really talking about true strict scrutiny where the government would have to show that there was no other possible way to achieve its objective to keep firearms out of the hands of people who have, who are felons. That, that would be the standard, right? That's true. The government would have to show a compelling interest. We don't dispute that there's a compelling interest in this case. But the government also would have to show that it was pursuing the least restrictive means of achieving that purpose. And, and, you know, following up on Judge Hawkins' comment, wherever Justice Scalia got the idea that this was accepted out, that clearly didn't come from originalist thinking. What, to what effect should we put that language from Heller where Justice Scalia made it clear that, that the Heller exception didn't apply to, in this setting? Right. Where does that fit? Okay. Well, you look at the Heller decision itself, which said, there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us. Okay. So then you're talking about the historical exceptions. According to, to my research here, I, I, I find that the common law strengthens the notion that nonviolent felons and felons don't have a right to possess guns going back into the Middle Ages. We've got lots and lots and lots of examples of where that was the case. Can you name any situation, any State, indeed, with all respect to Justice Scalia, any foreign government that permits a felon to possess a firearm? Can you give me any illustrations at all? Yes. We cited on our brief several States that right now permit felons to have firearms. Okay. Where, where in your brief? I will reserve time and I will get back to you, Your Honor, on that, on that question. Okay. That's an important question from my perspective. So I'll let you go with it. We cite several, several American jurisdictions which right now don't. I mean, the question really is, though I think under Heller, is not right now what's the founders, and this is my most important point, I think, in the whole argument, is that Justice Scalia and the originalists prevailed, at least with regard to the Second Amendment. We need to look. Courts must look at the original understanding of the founders as to what the scope of the right is. And that is my very point, that if you look at that, I find no. Well, there are no statutes at all. I understand that, but I find no, no reference to anything but the fact that people who had committed felonies were not permitted. I've got references here to Scotland and the English societies and the common law in a variety of States, and almost every one of them denies felons the right to possess firearms. It's as if they were civilly dead as far as this right is concerned. And I'm asking you, what authority can you cite to the contrary? That's very important. There are three law review articles that extensively discuss those issues that you're talking about. Okay. When we get back, give us the reference. Okay. But can I bring this back to a point that is on my mind? There's a string of Ninth Circuit cases pre-Heller that uphold the constitutionality of this statute, correct? Yes. What is it about Heller that should cause us to revisit those decisions? Those decisions were based on the Ninth Circuit's reading of the then prevailing view of the Second Amendment in Miller and Lewis, which was that the right is a collective right and not an individual right. Now we have Heller, which addressed a District of Columbia ordinance which prohibited private citizens from even owning serviceable weapons within their own home for self-protection, correct? Yes. And in that, the majority authored by Justice Scalia says, we say nothing about other, quote, reasonable restrictions on the right to bear arms, including felons, right? Right. But how did the Court do that? The Court doesn't look merely at what the Supreme Court said. It has to look at how it said it. What was the mode of analysis? And Heller, the first thing the Court does is say, what does the people mean in the operative clause of the Second Amendment? The people is used in the First Amendment. The people is used in the Fourth Amendment. Similar words are used in the Ninth Amendment. But I don't think those you're not answering Judge Hawkins' question with respect. There's nothing the Supreme Court has said to this point that says that the Second Amendment applies to the States. We're a three-judge panel. We've got several Ninth Circuit cases that expressly state that this statute or its predecessor are not impacted by the Second Amendment. And if Heller were the end of the story, that would be the end of the game, would it not, that we would have nothing to say about it? You're asking us to anticipate McDonald, are you not? You're asking us to say it applies to the States? Absolutely not. Okay. All right. No. McDonald is totally irrelevant. McDonald asks whether the Second Amendment is incorporated in the Fourteenth Amendment and applied to the States. This is a Federal statute. Right.  And so McDonald is totally irrelevant to this case. The issue is, and I think Judge Hawkins' question is certainly legitimate, what does this three-court panel do faced with the precedent? The precedent is based on totally rejected reasoning that the amendment protects collective rights, not individual rights. And therefore, it needs to be revisited. So you're saying we should take a fresh look at this issue because of what you've just described. Exactly. And that's what my 28J letter referring to the Seventh Circuit case in United States v. Scoyon says. What is required in a Second Amendment analysis is a two-step framework. First, the government can try to show that the law regulates conduct that falls outside the scope of the right as it was publicly understood at the time of the Bill of Rights. Now, unlike Scoyon, in this case the government has tried to do that, has tried to make the historical justification. They have failed for reasons that I will specify. The second step, if the government can't do that, the second step is the government can try to satisfy whatever level of means and scrutiny is held to apply. The government doesn't even go there in this case. You have about two minutes. I want to ask a question here. Supreme Court only reviews a minuscule number of cases that come up from the circuits. Maybe at one time it was 3 percent. It must be about 1 percent now. And the ruling, and I've always been taught and always followed the rule, Supreme Court decisions are to be read broadly, not narrowly. And even though there may be dictum here, it's still part of the opinion and we have to take what they say and not go on a frolic of our own and say, well, that's dictum and you're wrong and here's why. That's what you essentially want us to do. I think that you have to have some reason why we would say we're going to ignore the dictum, if that's what it is, and go on a frolic of our own and figure this thing out from the beginning as a fundamental right and what kind of scrutiny we give it and so on and so forth and write about a hundred-page opinion. That's what you'd like us to do. I'm not asking the Court to ignore the dictum. I'm asking the Court to look at the dictum in the context of a sentence that says there is time enough to expound upon the historical jurisdictions for the exceptions we have mentioned. That is something. Kennedy. Well, this isn't really the Supreme Court has adopted a new policy on the Second Amendment. I always want to say commandment. But really, there's the place where they have to explain their opinions further. But we've got a dictum, and as far as I'm concerned, I just don't see any way that we can get around that and need to any way that we can do it justifiably. I appreciate that, Judge Breyer. The only thing I would say is that the Court obviously felt that this was being left for a later day by the statement that I just read. And if it had declared otherwise, it wouldn't have made that sentence. You're saying this is the later day. If not now, then when? Yeah. All right. That's a familiar phrase. Hillel, Your Honor. We'll give you a little time for rebuttal. Thank you. I appreciate that. We'll hear from the government at this time. Mr. Carlberg. Yes, Your Honor. I know, but. May it please the Court. My name is Russell Carlberg. I'm an assistant United States attorney from Sacramento, California, representing the United States. I'll have five points I want to make. First, contrary to what the defendant claims. Can I ask you a couple of quick questions? Absolutely. Before you launch off. One, is the Solicitor General aware of the constitutional challenge here? Yes, Your Honor. Okay. So you've. I was on the phone yesterday with that office. Okay. All right. Second question is, however we come down on this issue. Do you agree with your opponent that we need to comprehensively examine the issue in whatever we write? No, Your Honor. Okay. And that's my first point. So if I can launch into that to answer your question. Absolutely. Great. Contrary to what the defendant claims, this is not a case of first impression in this circuit. There are two panels that have already reached this decision. First, there's the Gilbert case, which the defendant attacked as only having the benefit of oral argument on Heller. But there is another case called United States v. Smith, which was decided on June 1st, 2009. Those are both unpublished cases. They are unpublished cases, Your Honor. Absolutely. How can those be binding precedent on anything? They are not binding precedent. They're merely persuasive authority. But I would argue they're very persuasive authority because the same issue was presented to another panel of this circuit, and that panel essentially gave it the back of the hand. So are you or do I understand you to be saying that in lieu of writing an opinion that comprehensively deals with this issue, that we leave the issue unresolved in the hands of two unpublished opinions? Well, Your Honor, I believe that collectively probably are no more than four pages long. Your Honor, I think that those opinions provide a basis for analysis, and that analysis can start and stop with Heller to some extent. And also there is a Fifth Circuit case, Anderson, which reached a similar conclusion. Does the government want us to publish however we come out? Certainly, Your Honor. Okay. Now, a number of other circuits have dealt with this challenge post-Heller, haven't they? Yes, Your Honor. Have any of them written a comprehensive opinion? No, Your Honor. They're all basically per curiams, aren't they? They are, Your Honor. Okay. All right. Go ahead. Your Honor, part of the reason why these issues have been disposed of so quickly is because as the courts recognized in Gilbert and Smith, the Heller, what the defendant calls Heller dictum is actually more than dictum. It is part of the holding in some respect. It was not necessary to that decision, but in that opinion, the Court said right after it uses the words we hold, it said assuming that Appellant Heller is not otherwise excluded from exercising his Second Amendment rights. And it went on to say then the district must grant him a license to carry the gun in his home. That assumption that he's not otherwise excluded ties in with the dictum, which says that there are entire classes of people who can be disqualified from exercising their Second Amendment rights. And even if it is dictum, it is dictum only in the most technical sense. It's dictum in the sense that, as Judge Bright pointed out, that the Court only hears a small number of cases. It was very well aware that this issue would be brought up in the lower courts, and it was trying to provide guidance. It's about the ---- It's dictum in the sense that the facts of the Heller case didn't involve the issue before us here, did it? That is right, Your Honor.  So in that sense, it's dictum. It is dictum. What's the government's position about the appropriate standard of review? Whatever else Heller decided, it was that there was an individual right to bear arms in a Federal enclave. Your Honor. Given that situation and given that this is a Federal statute, if we reach this issue, what is the government's position about the appropriate standard of review and why? Your Honor, the government's position is that first ---- and I will answer that question in one moment, but as a prefatory point to that, there is no real need to get to the standard of review if you decide that felons are excluded from exercising the right, as I think the Heller case made clear, and as these other opinions have also followed. So if the right is not implicated, you don't go down the road of a standard of review. Now, if you decide the right is implicated because felons have some Second Amendment right as being part of the people under the historical analysis, then you would segue over into the defendant's as-applied-to-him challenge. And the standard of ---- Okay. So just to be sure I understand you correctly, your position is that at least as my research shows, there was no historical right of felons to own firearms. Therefore, they don't have that right at all. Whatever the general public, the non-disenfranchised, if you will, members of the public have, they don't, and therefore, 922G survives on that basis. We don't even have to get to the analysis of what the standard of review is. Yes, Your Honor, but I need to clarify a point there, because I think that the government's brief overstates the point a little bit. Now, at common law, this is the Solicitor General's brief that was filed by this office many months ago. Since that time, we have reviewed the historical record, and there's been a little bit of an evolution of thinking. I think the point still applies. But it is not fair to say that in 1789 in the colonies that felons were across the board always excluded from the right to carry a firearm. It is fair to say that the concept of civil death applied in England at the common law, and that felons were widely excluded in England at common law from possessing firearms. Are you advocating the concept of civil death for purposes of 922G? No, Your Honor.  Okay. Your Honor, what the government is advocating is the concept that the right to keep and bear arms at common law in the United States, in the colonies, at the time this amendment was debated and adopted, was subject to many restrictions, including, like the Pennsylvania amendment, which is the precursor to the Second Amendment, exclusion for commission of crimes. Now, the fact that it didn't apply in 100 percent of the cases is not the issue. The fact is that the legislature had the right to deny it based on certain qualifications. That gets back to my earlier point. What's the standard of review? A lot of the cases in other contexts talk about reasonable restrictions. Yes. Is that what the government's advocating? Your Honor, I believe that Heller makes clear that rational basis is not sufficient, that we would have to meet a standard. The heightened standard. The heightened standard. Intermediate scrutiny? Yes, Your Honor. I think that intermediate scrutiny or a sliding scale standard is what is appropriate, and the Skoyan case actually gets it fairly close to what it would be. And in the Skoyan case, it's stated that whether the test was whether there was a reasonable fit to an important government interest. So it's an intermediate standard. And as applied to this defendant, the fit is certainly reasonable. I mean, here we have a person who was convicted of violent, of crimes of potential violence, drugs such as crystal methamphetamine. The defendant cites his own PSR. And if you look at the defendant's own PSR, I mean, here's somebody who admits that he was a crystal methamphetamine addict breaking into cars to steal things in order to supply his habit. He was seen at midnight in a group of folks wearing gang colors. But interestingly enough, though, you, to some degree, you kind of make their case. One point of view is that there's, if a person is a felon, he's a felon, he's a felon, a felon, a felon, it doesn't matter what the details are. You're arguing specifics, which would suggest basically a case-by-case determination as opposed to whether somebody is a felon. Doesn't that destroy 922g? No, Your Honor, because the fact is that the defendant here has brought an as-applied challenge, and he doesn't succeed there. He cannot bring a facial challenge because the standard for a facial challenge is that no set of circumstances exist under which the act could be valid. And that's a Supreme Court case from 2008. But again, even though it's an as-applied challenge, you're arguing the specifics of his case as opposed to saying this guy's a felon, therefore, 922g applies. It doesn't really matter what the details of the felony are. Well, Your Honor, I would – let me address that point. The government briefed, and the government stands by this, that the legislature, the Congress, was well – and I have a minute or two that I'd like to talk about this – that there was a rational basis and even more than a rational basis in Congress excluding felons from the class of folks who were allowed to carry firearms. If you look at the 1960s history of the United States and the movement toward expanding the scope of people who were prohibited from owning firearms, which a Ninth Circuit case called – if I can find it here in one minute – there's a Ninth Circuit case from 1970 which talks about that, and it says that racketeering was a huge problem in the United States in the 1960s. There were many people with nonviolent felonies having access to firearms who were providing firearms to their criminal confreres, if you will, to their co-conspirators in racketeering organizations. There was a – there was a serious concern about the illicit firearms trade. There was a serious concern about the threat to the public. Therefore, Congress was well within its right to say that people who were felons, people who have taken that step to transgress the social contract to such an extent cannot be trusted with firearms. You're arguing intermediate scrutiny now, aren't you? You know, that's one of the big issues that's going to have to be decided sometime, whether or not what the standard of review is and what kind of scrutiny we give. And there's plenty of argument that would say that all the government has to do is have a rational basis for keeping guns out of the hands of anybody, practically, and limiting the Supreme Court opinion pretty narrowly to what it said and to what it decided. So I don't know that we're very much in a position here to decide what level of scrutiny goes in. That's a pretty tough question. Yeah, okay, I'll get it later. Your Honor, your Honor is correct that it is a question fraught with many details, but I think that what this panel can do is look to the fact that we have a – the Supreme Court has clearly said that felons are carved out from that right. They are outside the scope of the right. Well, that's the way I've been looking at it all the way through. But, of course, your opponent wants us to write a massive opinion that really says the Ninth Circuit is out skating along on thin ice again. Well, the government would urge the Court to write a very, very narrow, short opinion, Your Honor. I'm shocked. Your Honor, to get back to the point of the facial challenge, I mean, the defendant here, what the defendant is trying to do is to carve out a subclass. I mean, he has to show that this is not constitutional as applied in all circumstances. He can't do that under the law. Can we, based upon the language in Heller and the exception there, say that this group of people is carved out from the teaching of Heller? Whatever the Supreme Court decides in the future, they didn't decide this issue now, and therefore we don't know, from a Supreme Court perspective, whether felons have an individual right to own firearms. Well, Your Honor, I would go a little bit further. I would say that we can be pretty sure, from looking at the dictum in Heller, that they believe felons do not have that right. And so I think that if you look at what Judge Kaczynski said one time in a case called Godden, Federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as the Court's outright holdings. And that's a basic principle of constitutional law that the appellate courts often apply, and it would apply a fortiori here with Heller, which is a very recent decision. The Supreme Court said nothing to contradict that since then. And as the Court has noted, there have been a plethora of memorandum decisions applying that. Okay. I think we have your argument well in hand. I don't see any other questions. Rebuttal will give you two minutes. Thank you. This is not a facial challenge. It's an as-applied a challenge. Considered dictum. That's the term. Deference to considered dictum. No one can say this is a considered dictum. It is one sentence without citation to authority, without explanation, without rationale. So you don't think it was considered? Considered in what? Where is the consideration? If it's in one sentence in an 80-page opinion where 45 pages have been devoted to the principle that the people means all the people without exception, then I don't think that this can fairly be considered considered. So you think they just threw it in. They didn't really think about it. I think that they, that the majority thought about it. I think it was a result of a compromise. Federal defenders were supposed to smoke certain substances. Sounds like maybe you have been. I think, Your Honor, that it is the result of compromise, that it was not considered in the terminology of considered dictum that Judge Kaczynski was using to refer to what deference is appropriate. That was always leading up to Heller, to credit your argument, that that was always the great fear that if the Supreme Court said that the Second Amendment embraced and guaranteed a private right to personally own and possess firearms, that the first statute that would fall would be the felon in possession statute. Yes. Okay. In response to Judge Smith's question, it's on page 15 of our brief. That's the one where you were talking about the history, right? Yes, our opening brief. Vermont still has no laws against possessing felon in possession. No laws against? Still has. Do they have any laws that say they have the right? No. Okay. But as, you know, we've shown Professor Larson, Professor Carl, Carl Larson, Professor Marshall, and Professor Winkler have written extensive law review articles post-Heller demonstrating that there were no prohibitions against felons having firearms before World War I. But that's kind of the negative pregnant. It is difficult to prove a negative. I agree with Your Honor. But to the extent that it can be done, these law review articles have done that. And I urge the Court to consider those most thoroughly and to remand this case with instructions to the district court to dismiss the indictment on the ground that the Second Amendment to the Constitution of the United States. Okay. Thank you both for your argument. Very interesting case. The Court's going to stand in recess for ten minutes before we take up the last two cases on the calendar.
judges: Bright, Hawkins, Smith M.